UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                            :

RAYMOND JUNIOR MILLER,
                            :

        Plaintiff,                  REPORT AND

                            :       RECOMMENDATION

      -v.-
                            :       15 Civ. 7019 (VEC) (GWG)

ST. LUKE'S ROOSEVELT HOSPITAL CENTER d/b/a
MOUNT SINAI ROOSEVELT HOSPITAL,      :

        Defendant.              :

------------------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Raymond Junior Miller filed this action pro se against his former employer St.

Luke's Roosevelt Hospital Center d/b/a Mount Sinai Roosevelt Hospital ("St. Luke's").  The

plaintiff makes claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law

§ 290 et seq.[1]  The defendant has moved to dismiss the complaint with prejudice pursuant to

Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P.

56.[2]  For the reasons stated below, the defendant should be granted summary judgment

---

[1] The complaint filed in the Court's docket sheet does not match the copy of the complaint submitted by the defendant with its motion papers.  The former makes claims under both Title VII and the NYSHRL.  See Complaint for Employment Discrimination, filed Sept. 4, 2015 (Docket # 1) ("Compl."), at 1.  The version submitted by the defendant makes only a Title VII claim.  See Complaint, appended as Ex. 6 to Declaration of Rory J. McEvoy, filed Oct. 29, 2015 (Docket # 17) ("McEvoy Decl."), at 1.

[2] See Notice of Motion, filed Oct. 29, 2015 (Docket # 15); Notice to Pro Se Litigant, filed Oct. 29, 2015 (Docket # 16); McEvoy Decl.; Defendant's Rule 56.1 Statement, filed Oct. 29, 2015 (Docket # 18); Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, filed Oct. 29, 2015 (Docket # 19) ("D. Mem."); Letter from Raymond Junior Miller, filed Nov. 25, 2015 (Docket # 22) ("First P. Ltr."); Affidavit, filed Feb. 10, 2016 (Docket # 27) ("Second P. Ltr."); Reply Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, filed Feb. 25, 2016 (Docket # 29).

dismissing the complaint.

I.  BACKGROUND

      Our recitation of the facts consists of all admissible evidence submitted by plaintiff as well as the admissible evidence submitted by defendant that is undisputed.

      Miller was employed as a "Security Officer" at St. Luke's.  See Compl. at 14.[3]  He worked "for [St. Luke's] for seven (7) years."  Id. at 4.  He was suspended on August 8, 2013, "because of an order of protection served by Miss Helsa White."  Id.; see also id. at 14 ("Due to the submission of an Order of Protection . . . ordering you to stay away from a St. Luke's Roosevelt employee . . . you are the [sic] suspended from work as a Security Officer.").

      During his suspension, Miller "became homeless [and] had to send [his] children to stay with relatives."  Id. at 4.  He was unable to "find a job or claim unemployment because [he] was suspended."  Id.   Miller "went on several interviews but was denied employment because of unflavourable [sic] response from [St. Luke's]," id. at 4.  These interviews apparently occurred while he was suspended.   See Second P. Ltr. at 3 ("[D]uring the period of my suspension, I sought employment as a security guard with Memorial Sloan Kettering Cancer Center and Bronx Lebanon Hospital, whom I believe had both been informed by St. Luke's Hospital that I was under suspension at the time I applied for security jobs."); see also New York State Division of Human Rights Complaint Form, February 25, 2015 (annexed as Ex. 1 to McEvoy Decl.,) at 3 (Miller states that the "most recent act of discrimination" was January 13, 2014, the date of his termination).

---

[3] We cite to the complaint because it was signed under oath.  The plaintiff attached 11 documents to the complaint.  Our citations to the complaint and these documents refer to the page number assigned by the ECF system.

Miller was "terminated January 13, 2014." Id. Miller's "union (S.S.O.B.A.) special and superior officer's benevolent association[,] refused to assist [him]." Id.

A. The 2013 Intake Questionnaire

While he was on suspension, Miller completed an "Intake Questionnaire" for the U.S. Equal Employment Opportunity Commission ("EEOC") on November 14, 2013. See U.S. Equal Employment Opportunity Commission Intake Questionnaire, appended as Ex. 3 to McEvoy Decl. ("Intake Questionnaire"), at 4. The Intake Questionnaire states at the top as follows:

> **REMEMBER**, a charge of discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination.

Id. at 1(emphasis in original).

The last page of the Intake Questionnaire gives the person filling it out a choice of checking one of two boxes. Id. at 4. The form states,

> **If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.**

Id. (emphasis in original).

> Box 1 reads:
>
> I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**

Id. (emphasis in original).

> Box 2 reads:
>
> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination

3

information about the charge, including my name.  I also understand that the
EEOC can only accept charges of job discrimination based on race, color,
religion, sex, national origin, disability, age, genetic information, or retaliation for
opposing discrimination.

Id. (emphasis omitted).

Miller checked Box 1.  Id.[4]

B.  The 2015 New York State Division of Human Rights Filing

Miller did not file any other documents with a court or administrative agency until his

complaint to the New York State Division of Human Rights ("NYSDHR") was filed on March 5,

2015.  See Letter from David E. Powell, dated Mar. 5, 2015, appended as Ex. 1 to McEvoy

Decl.; see also Compl. at 10.[5]  On June 23, 2015, the NYSDHR dismissed Miller's complaint

because his "case was not filed with the [NYSDHR] within one year after the alleged unlawful

discriminatory practice, as required by Section 297.5 of the Human Rights Law."  Compl. at 10.

This charge "was also filed under Title VII of the Civil Rights Act of 1964."  Id. at 11.  On

August 6, 2015, the EEOC closed its file on Miller's claim because it found "[n]o [j]urisdiction-

[c]harge filed over 300 days."  Id. at 7.

C.  Proceedings in this Court

Miller filed this action pro se on September 4, 2015.  Id. at 6.  St. Luke's moved to

dismiss the complaint or, in the alternative, for summary judgment.  See Notice of Motion, filed

---

[4] Fine print at the end of the form indicates that the form's "[p]rincipal [p]urpose . . . is to
solicit information about claims of employment discrimination, determine whether the EEOC
has jurisdiction over those claims, and provide charge filing counseling, as appropriate . . . this
questionnaire may serve as a charge if it meets the elements of a charge."  Id.

[5] While plaintiff asserts that he filed this charge in "January 2015," Second P. Ltr. at 2,
even using the January 2015 time period would not save any claims from dismissal.  The same is
true for his assertion that his complaint to the NYSDHR had been signed on February 25, 2015.
Id.

Oct. 29, 2015 (Docket # 15).  In their memorandum of law, the defendant argued only that Miller's claim was time-barred.  D. Mem. at 4.

Miller filed two letters in the following month.  See Letter from Raymond Junior Miller, filed Nov. 23, 2015 (Docket # 21); see also First P. Ltr.  Miller submitted the first of these letters "to offer updated information regarding my attempts at retrieving additional records."  Letter from Raymond Junior Miller, filed Nov. 23, 2015 (Docket # 21), at 1.  Miller also requested the Court's assistance in obtaining telephone records and other records that would show contact between himself and the EEOC or the New York State Division of Human Rights.  Id.  Miller's next letter laid out his arguments for why his claim should not be dismissed.  See First P. Ltr.  In response, the Court issued an Order ruling that the records plaintiff sought were "not necessary for plaintiff to oppose defendan[t's] motion to dismiss as they would merely corroborate information that plaintiff himself already knows."  See Memorandum Endorsement on Letter from Raymond Junior Miller, filed Dec. 2, 2015 (Docket # 23).  The Court also noted that his first letter was not under oath and thus would not be considered.  Id.  The Order directed plaintiff to "oppose the defendan[t's] motion by filing an affidavit or declaration under oath that sets forth all facts that plaintiff wishes the Court to consider in opposition to the motion."  Id.  Miller then filed a letter sworn under oath.  See Second P. Ltr.

II.  SUMMARY JUDGMENT STANDARD

Because both plaintiff and defendant have relied on material outside the pleadings, and because the defendant moved in the alternative for summary judgment, we evaluate defendant's motion as one for summary judgment.  See generally Fed. R. Civ. P. 12(d) (a motion to dismiss must be treated as a motion for summary judgment where materials outside the pleadings are not excluded by the court).

5

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed," and the court must draw "all justifiable inferences" in favor of the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis and additional citation omitted), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted).

Because Miller is proceeding pro se, we construe his papers "liberally and interpret them to raise the strongest arguments that they suggest." E.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation and internal quotation marks omitted). Nonetheless, "our application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (citation and internal quotation marks omitted); accord Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to

6

which a pro se litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (alteration, internal quotation marks, and citations omitted), aff'd, 441 F. App'x 816 (2d Cir. 2011).

III.  DISCUSSION

A.  Timeliness of Plaintiff's Title VII Claim

1.  Statutory Deadline

The Second Circuit has explained that a plaintiff in a Title VII suit must "file a charge with the EEOC within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78-79 (2d Cir. 2015) (citation and internal quotation marks omitted); accord Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999); Harris v. City of New York, 186 F.3d 243, 248 n.2 (2d Cir. 1999); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996). This 300–day time period, which is contained in 42 U.S.C. § 2000e–5(e)(1), thus acts as a statute of limitations.  Vega, 801 F.3d at 78-79; accord Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004) ("A plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).").  In this case, plaintiff alleges he was terminated on January 13, 2014.  Thus, to challenge this termination, he was required to file a charge with the EEOC on or before November 10, 2014.

Plaintiff points to only one document as constituting the requisite charge during the 300-day period: the November 14, 2013, Intake Questionnaire, which was filed before he was terminated and while he was on suspension.  See Second P. Ltr. at 1-2 (suggesting that he

properly filed a charge in 2013).  In <u>Fed. Express Corp. v. Holowecki</u>, 552 U.S. 389 (2008), the

Supreme Court addressed whether an intake document filed with the EEOC constitute a "charge"

for timeliness purposes.[6]  <u>Holowecki</u> held that, "if a filing is to be deemed a charge it must be

reasonably construed as a request for the agency to take remedial action to protect the

employee's rights or otherwise settle a dispute between the employer and the employee."  <u>Id.</u> at

402.  <u>Holowecki</u> thus rejected the argument made by plaintiffs in that case that "a charge need

contain only an allegation of discrimination and the name of the employer."  <u>Id.</u> at 401.

<u>Holowecki</u> found that a completed Intake Questionnaire constituted a charge when it was

"supplemented with a detailed six-page affidavit" that ended with a request to "'[p]lease force

[the employer] to end their . . . discrimination."  <u>Id.</u> at 405 (first alteration in original).  Indeed,

the <u>Holowecki</u> Court wrote that "[w]ere the Intake Questionnaire the only document before us

we might agree that its handwritten statements do not request action," and therefore would not

constitute a "charge."  <u>Id.</u>  The form questionnaire in use at that time "suggest[ed] . . . that the

form's purpose is to facilitate 'pre-charge filing counseling' and to enable the agency to

determine whether it has jurisdiction over 'potential charges.'"  Id.

      The EEOC no longer uses the form described in Holowecki.  As one case noted,

      the EEOC has changed the [Intake Questionnaire] to require a claimant to clearly
      express his or her intent by checking one of two boxes, thereby forcing claimants
      to decide whether their questionnaire is a request for the agency to take remedial
      action, such that courts can objectively determine whether each questionnaire is a
      charge of discrimination or merely a request for further information.

Brown, 2013 WL 3789091, at *8 (internal quotation marks omitted) (quoting Lugo-Young v.

---

[6] While <u>Holowecki</u> was decided under the Age Discrimination in Employment Act, "the
standard announced in <u>Holowecki</u> for determining what is a 'charge' is also reasonably applied
to Title VII."  Brown v. City of New York, 2013 WL 3789091, at *8-9 (S.D.N.Y. July 19, 2013)
(collecting cases).

Courier Network, Inc., 2012 WL 847381, at *6 (E.D.N.Y. Mar. 13, 2012)).  As a result, courts commonly hold that "checking Box 2 on the current form of the EEOC's Intake Questionnaire, which authorizes the EEOC 'to look into the discrimination' described in the form and describing that discrimination in detail in the Questionnaire . . . 'qualifies as a charge with the EEOC for timeliness purposes.'"  Acheampong v. New York City Health and Hosps. Corp., 2015 WL 1333242, at *7 (S.D.N.Y. Mar. 25, 2015) (quoting Brown, 2013 WL 3789091, at *8-9).

        Miller checked Box 1, however.  This box says, "I understand that by checking this box, I have not filed a charge with the EEOC.  **I also understand that I could lose my rights if I do not file a charge in time**."  Intake Questionnaire at 4 (underscoring added).  Such clear and unambiguous language cannot, to use Holowecki's language, "reasonably [be] construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  Holowecki, 552 U.S. at 402.  This conclusion comports with the decision in Lugo-Young v. Courier Network, Inc., 2012 WL 847381, at *6-7 (E.D.N.Y. Mar. 13, 2012).  In Lugo-Young, the Title VII plaintiff "checked the second box" on an EEOC intake questionnaire, "indicating she 'want[ed] to talk to an EEOC employee before deciding whether to file a charge of discrimination' and that she understood 'that by checking this box, [she had] not filed a charge with the EEOC.'"  Id. at *6 (alterations in original) (citation omitted).  Lugo-Young found that "[b]ased on this plain language, plaintiff's . . . questionnaire cannot be construed as a timely EEOC charge."  Id.  Thus, absent the application of some other doctrine, plaintiff's suit is time-barred.

        2.  Equitable Tolling

        Miller makes a number of assertions regarding the filing of his EEOC charge that we

construe as arguments for the application of equitable tolling.  Courts may equitably toll a filing

deadline when the employee "was prevented in some extraordinary way from exercising his

rights."  <u>Miller v. Int'l Tel. and Tel. Corp.</u>, 755 F.2d 20, 24 (2d Cir. 1980), <u>cert. denied</u>, 474 U.S.

851, <u>reh'g denied</u>, 474 U.S. 1015 (1985).[7]  The Second Circuit has held that

> [w]hen determining whether equitable tolling is applicable, a district court must
> consider whether the person seeking application of the equitable tolling doctrine
> (1) has "acted with reasonable diligence during the time period she seeks to have
> tolled," and (2) has proved that the circumstances are so extraordinary that the
> doctrine should apply.

<u>Zerilli–Edelglass</u>, 333 F.3d at 80-81 (quoting <u>Chapman v. ChoiceCare Long Island Term</u>

<u>Disability Plan</u>, 288 F.3d 506, 512 (2d Cir. 2002)); <u>accord</u> <u>Bolarinwa v. Williams</u>, 593 F.3d 226,

231 (2d Cir. 2010).  The "burden of demonstrating the appropriateness of equitable tolling

. . . lies with the plaintiff."  <u>Boos v. Runyon</u>, 201 F.3d 178, 185 (2d Cir. 2000) (citation omitted).

Plaintiff has not met that burden here.

First, Miller has not shown that he "acted with reasonable diligence."  <u>Zerilli-Edelglass</u>,

333 F.3d at 80 (internal quotation omitted).  Miller states that an EEOC employee "advised me

to seek other measures to be reinstated during my suspension, instead of receiving my

employment complaint at that time."  Second P. Ltr. at 2.  He asserts that an employee told him

that since he was "only suspended,"  it was "best for me to call back once I was terminated in

order to file a discrimination complaint."  <u>Id.</u> at 2 (internal quotation omitted); <u>accord</u> <u>id.</u> at 4 ("I

was dissuaded from completing that EEOC complaint process by an EEOC representative who

advised me to wait until I was discharged to file a claim.").  But Miller did not act with

---

[7] Equitable tolling may also be available where a plaintiff "was unaware of his or her
cause of action due to misleading conduct of the defendant."  <u>Zerilli–Edelglass v. N.Y.C. Transit
Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003) (citation omitted).  There are no such allegations here.

"diligence" to follow these instructions.  Fully aware of the suggestion that he file a complaint once he was terminated, he did not file a complaint immediately after he was terminated but instead waited for more than a year to file his first discrimination complaint in the case.  The Intake Questionnaire he signed had, of course, clearly stated the 300-day time limit, noted that he had not filed a charge with the EEOC, and required him to indicate that he "underst[ood] that I could lose my rights if I do not file a charge in time."  Intake Questionnaire at 4 (emphasis omitted).

Plaintiff also states that he "personally made numerous telephone calls have [sic] to both the NYSDHR and with EEOC prior to the complaint being verified," and similarly that he "visited both office buildings of the NYSHR [sic] and the EEOC prior to [his] complaint being verified."  Second P. Ltr. at 4.  But the mere fact that he visited the office buildings and made telephone calls does nothing to show that he acted with diligence to actually file a charge.

Moreover, even if Miller's account of his conversations with EEOC representatives showed that he was "reasonabl[y] diligent," their advice to him does not constitute "extraordinary circumstances" that would justify equitable tolling.  See Zerilli-Edelglass, 333 F.3d at 80-81.  To be sure, the Second Circuit has held that a plaintiff's reliance on representations made by the EEOC can sometimes constitute "extraordinary circumstances" justifying equitable tolling.  See Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984) (tolling permitted where "an EEOC official had erroneously advised [plaintiff] that the complaint could be filed late").  But Miller does not allege that EEOC officials told him an incorrect filing date, as in Johnson, or that they indicated that his claim had actually been filed and that they were working on it, thereby lulling him into thinking that they were proceeding with an investigation, e.g. Walker v. Linklaters LLP, 948 F. Supp. 2d 396, 399-400 (S.D.N.Y.

11

2013) (extraordinary circumstances shown when plaintiff "allege[d] he was misled by EEOC personnel as to the deadline for filing his claim."). Instead, he alleges simply that the EEOC employees advised him to file his charge once he was terminated. There is nothing "extraordinary" about such advice that would justify tolling of the statute of limitations.

3. Other Arguments

Miller argues that he "attempted to retrieve records from [the EEOC and NYSDHR] which will prove that [he] started the process of filing an employment discrimination complaint . . . prior to a 'time bar' existing." First P. Ltr. at 2. He implies that these records will prove he timely filed with the EEOC, based on his telephone calls and visits to EEOC offices. See Second P. Ltr. at 4 ("I have been unsuccessful in retrieving records that would have offered evidence in support of my attempts at timely filing with the EEOC and with the NYSDHR.").

This argument does not help his case, however, because federal regulations require that an EEOC charge be in "writing." 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified."). Thus, plaintiff's conversations with EEOC and/or NYSDHR personnel cannot constitute a "charge." As case law notes, the significant date is the date of the charge, not when a complainant first contacted the EEOC or visited its offices. See, e.g., Haghpassand v. Reuters Consulting Grp., 2004 WL 594576, at *5 n.2 (S.D.N.Y. Mar. 25, 2004) (alleged visit to EEOC offices did not justify equitable tolling where plaintiff's submissions to the court indicated "that he understood that additional steps were required" to file an EEOC charge), aff'd, 120 F. App'x 859 (2d Cir. 2005); accord Hourahan v. Ecuadorian Line, Inc., 1997 WL 2518, at *4 (S.D.N.Y. Jan. 3, 1997) (plaintiff's "appearance and interview with" an employee of New York City Commission on Human Rights does not "provide the Court with a basis to deem plaintiff's charge filed [on time].").

12

B. <u>NYSHRL</u>

Federal courts have "supplemental jurisdiction" over state law claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367(a).  Nonetheless, a district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction."  <u>Id.</u> § 1367(c)(3); <u>accord</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966) (state claims "should be dismissed" if federal claims are dismissed before trial); <u>In re Merrill Lynch Ltd. P'ships Litig.</u>, 154 F.3d 56, 61 (2d Cir. 1998); <u>Lennon v. Miller</u>, 66 F.3d 416, 426 (2d Cir. 1995).  Here, Miller's only federal claim against the defendant should be dismissed.  Thus, the Court should decline to exercise supplemental jurisdiction over his state law claim.

IV.  <u>CONCLUSION</u>

For the reasons stated above, the defendant's motion to dismiss (Docket # 15) should be granted.

**PROCEDURE FOR FILING OBJECTIONS TO THIS**
**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Valerie E. Caproni at the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Caproni.  If a party fails to file timely objections, that party

will not be permitted to raise any objections to this Report and Recommendation on appeal. <u>See</u>

<u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,</u>

<u>Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: April 1, 2016
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Raymond Junior Miller
2740 Cruger Ave., 1st Floor
Bronx, NY 10467

Counsel by ECF

14